# EXHIBIT A

******AN ORDINANCE BY COUNCILMEMBERS MICHAEL JULIAN BOND, JENNIFER N. IDE, DUSTIN HILLIS, MATT WESTMORELAND AND ANDRE DICKENS AS SUBSTITUTED (2) BY PUBLIC SAFETY AND LEGAL ADMINISTRATIVE COMMITTEE AND AMENDED BY THE ATLANTA CITY COUNCIL TO AMEND CHAPTER 150, (TRAFFIC AND VEHICLES), OF THE ATLANTA CITY CODE OF ORDINANCES TO CREATE A NEW ARTICLE X TO BE ENTITLED "SHAREABLE DOCKLESS MOBILITY DEVICES" TO ESTABLISH REGULATIONS RELATED TO SHAREABLE MOBILITY DEVICES; AND FOR OTHER PURPOSES.*(FAVORABLE ON SUBSTITUTE ON CONDITION BY PUBLIC SAFETY AND LEGAL ADMINISTRATION COMMITTEE 12/11/18)***

WHEREAS, pursuant to Ordinance Number 14-O-1325 adopted by the Atlanta City Council on July 21, 2014 and approved by operation of law on July 30, 2014 and Ordinance Number 14-O-1345, adopted by the Atlanta City Council on March 2, 2015 and approved by operation of law on March 11, 2015, the City adopted citywide bike share ordinances which anticipate a docked bikeshare business model (City of Atlanta Code of Ordinances Sec. 16-28.09 and Sec. 138-62); and

WHEREAS, companies have created new business offering bicycles and scooters, (Dockless Mobility Devices) for public use via the placement of shareable mobility devices throughout the City of Atlanta ("City") without being locked to a bike rack or other infrastructure; and

WHEREAS, the citywide bike share ordinances do not regulate Shareable Dockless Mobility Devices; and

WHEREAS, the City has evaluated other Shareable Dockless Mobility Device ordinances from Seattle, San Francisco, Chicago and other cities to understand the regulatory schemes they have implemented to regulate these new devices; and

WHEREAS, the City has a substantial interest in regulating how private operators of Shareable Dockless Mobility Devices operate on the public rights-of-way to promote public safety, and to ensure the public right of way remains obstruction free; and

WHEREAS, accordingly, the City of Atlanta desires to amend Chapter 150, Traffic and Vehicles, of the City of Atlanta Code of Ordinances to create a new Article X, to be entitled Shareable Dockless Mobility Devices, to establish regulations related to shareable mobility devices, which shall include a requirement that Dockless Mobility Device System Operators secure a permit issued by the City for the operation of Dockless Mobility Device Systems in the City of Atlanta; and

WHEREAS, it is the desire of the City to establish an annual permit fee to be paid by Dockless Mobility Device System Operators which shall permit the operation of up to 500 Dockless Mobility Devices, along with an additional per device fee for each device operated under a Dockless Mobility Device permit over the initial 500 devices to offset any costs to the City related to the implementation and enforcement of the regulations contained in Chapter 150, Article X of the City of Atlanta Code of

Ordinances; and

WHEREAS, the purpose of all fees established in this Ordinance, is not to raise revenue, but to cover the cost of the regulatory activity associated therewith; *Hadley v. City of Atlanta*, 232 Ga. App. 871, 874, 502 S.E. 2d 784 (1998); and

WHEREAS, the City anticipates that the annual cost to the City of the regulatory activity required by this Ordinance exceeds the amount to be collected by any fees set forth herein as set forth in the fee study attached hereto as Exhibit A.

NOW THEREFORE, THE CITY COUNCIL OF THE CITY OF ATLANTA, GEORGIA, HEREBY ORDAINS:

SECTION 1: That Chapter 150 of the City of Atlanta Code of Ordinances, be amended to add a new Article X, entitled "Shareable Dockless Mobility Devices" which shall read as follows:

Article X - Shareable Dockless Mobility Devices

Sec. 150-400 Definitions

As used in this article, unless specifically stated otherwise, the following terms shall mean and include:

*Dockless Mobility Device System Operator* ("Operator") is a private entity that owns and operates a City permitted Shareable Dockless Mobility Device System.

*Dockless Mobility Device*: an electric/motorized device that permits an individual to move or be moved freely which shall include but not be limited to e-scooters and shall exclude bicycles, e-bicycles, and any motor vehicle required to be registered with the state in accordance with state law, or the operation of which is otherwise governed by state law.

*Shareable Dockless Mobility Device*: an electric/motorized or human-powered device that permits an individual to move or be moved freely, is available for rent to the general public for short-term one-way trips without the installation of any infrastructure in the public right-of-way and shall include but not be limited to a bicycle/e-bicycle, scooter/e- scooter and shall exclude any motor vehicle required to be registered with the state, in accordance with state law.

*Shareable Dockless Mobility Device Permit* ("Dockless Permit"): a permit required to operate a Shareable Dockless Mobility Device System within the City.

*Shareable Dockless Mobility Device System* is a fleet of Shareable Dockless Mobility Devices operated by private entities that provides the general public with Shareable Dockless Mobility Devices.

Sec. 150-401 Permit requirements.

(a) No Shareable Dockless Mobility Devices may be operated or deployed in the City of Atlanta without a permit. Violations of this sub-section shall be punishable in accordance with Section 1-8.

(b) Any Operator applying for a Dockless Permit shall submit a permit application to the Department of City Planning Office of Zoning and Development. The application shall be sworn to by the applicant or agent thereof and must include the following:

1) Completed Dockless Permit application form;

2) City business license, (occupational tax certificate);

3) Insurance documentation and acknowledgement that the City is indemnified and held harmless for all liability related to the operation of the Shareable Dockless Mobility Device System;

4) Images and description of the applicant's Shareable Dockless Mobility Device, including technical specifications, any signage or instructions permanently affixed to the device, mobile application, and documentation that the devices meet safety standards as set forth in this article;

5) Address and contact information of the general manager for the Shareable Dockless Mobility Device System;

6) Plan for educating users on proper parking, operations, and other applicable laws;

7) Plan for encouraging helmet usage;

8) Plan for sustainability measures when disposing of a broken Shareable Dockless Mobility Device;

9) Application fee of $100.

(c) The annual Dockless Permit fee shall be $12,000.00 annually for 500 devices and an additional $50.00 per Shareable Dockless Mobility Device in the Operator's fleet in excess of 500 devices. Additional devices may be permitted, in compliance with any fleet maximums set forth in the administrative

regulations, at a prorated rate in accordance with the administrative regulations.

(d) The Dockless Permit shall be valid for 12 months as of the date of the original issuance of the permit and shall thereafter expire. All permit holders shall be required to renew their permits annually on forms prescribed by the Department of City Planning Office of Zoning and Development.

(e) Any expansion of a Shareable Dockless Mobility Device fleet not permitted in the most current Dockless Permit on file may be authorized through the filing of an application to amend the permit to add devices along with the applicable fees.

(f) Upon administrative declaration by the Commissioner of City Planning, a permit holder may apply for a temporary expansion of their fleet in accordance with a temporary fleet maximum.

Sec. 150-402 Enforcement.

(a) The primary authority and responsibility for the enforcement of the provisions of this Chapter in the City's right of way shall be vested in the Commissioner of the Department of Public Works.

Upon a determination that an Operator is in violation of this Chapter or any administrative regulations promulgated by the Department of City Planning~~, the Commissioner of the Department of Public Works, or his designee, shall give~~ the City of Atlanta shall issue notice or issue a citation. Notices of violation or citations may result in:

1) The revocation or suspension of a Dockless Permit after written notice and reasonable opportunity to cure; and/or

2) An administrative fine not exceeding $1,000.00 per day for each ~~a~~ violation of a provision of this chapter or any administrative regulations promulgated by the Department of City Planning

by the Department of City Planning Office of Zoning and Development.

(b) Appeals. The appeal of a notice or citation issued under this Section shall be filed in the City of Atlanta Municipal Court within 14 days of the issuance of the notice or citation.

(c) If an Operator's permit is revoked, the Operator may not reapply for a new permit for 12 months after all of the Operator's Shareable Dockless Mobility Devices are removed from the City. Operator must continue to provide access to real time data regarding device locations until all of Operator's Shareable Dockless Mobility Devices are removed.

Sec. 150-403 Safety.

(a) The motor of the Shareable Dockless Mobility Devices must not alone be capable of propelling the device in excess ~~exceeding a motor driven speed~~ of 15 miles per hour.

(b) All Shareable Dockless Mobility Devices must adhere to minimum safety standards as established by law.

(c) All Operators shall maintain liability insurance with the City as the certificate holder in the amounts determined by the Office of Risk Management.

(d) All Operators will educate users regarding laws applicable to riding and operating in the City.

(e) Operators will encourage users to wear a helmet while operating a Shareable Dockless Mobility Device.

(f) Shareable Dockless Mobility Devices shall not be operated by more than one person at a time.

(g) While operating a Shareable Dockless Mobility Device or Dockless Mobility Device, no individual shall physically hold a wireless telecommunications device, including cell phones.

Sec. 150-404 Parking.

(a) The City reserves the right to identify parking areas and no-parking areas through administrative regulations issued by the Department of City Planning Office of Zoning and Development. All parking areas and no-parking areas will be communicated directly to operators and posted online.

(b) Operators must communicate proper Shareable Dockless Mobility Devices parking requirements to all users.

(c) Shareable Dockless Mobility Devices shall be parked upright at all times.

(d) No person shall park a Shareable Dockless Mobility Device or a Dockless Mobility Device other than upon the sidewalk in a bike rack or against a building or at a curb, in such manner as to afford the least obstruction of pedestrian traffic and provides a minimum of 5 feet clear for pedestrians.

(e) Shareable Dockless Mobility Devices and Dockless Mobility Devices shall not ~~cannot~~ be parked:

1) On vegetation;

2) On any grate, manhole cover, or access lid;

3) In any loading zone, driveway, vehicle travel lane, bike lane, or shared-use path;

4) Where they obstruct vehicle parking;

5) Where they obstruct pedestrian or wheelchair access to:

i. Private or public buildings and establishments;

ii. Street features that require pedestrian access including but not limited to benches, parklets, parking pay stations, and crosswalk buttons;

iii. Accessibility and safety features including curb ramps, wheelchair ramps, ramp landings, handrails, areas of refuge, and detectable warning strips.

6) In bus stop clear zones defined as:

i. The on street clear zone defined under the "Identification of bus stops" in Chapter 150, Article IV;

ii. A bus stop clear zone of 40 feet long by 8 feet wide for transit stops served by only one route. When signage indicates the presence of two or more bus routes at a transit stop, an additional 40 feet of curb length per route should remain clear.

7) At or within 5 feet of a bikeshare station;

8) Where it obscures any fixed, regulatory, or informational signs or traffic control devices;

9) Where it obstructs emergency service infrastructure including but not limited to fire hydrants, stand pipes, or Automated External Defibrillators.

(f) All Shareable Dockless Mobility Devices shall have permanently affixed contact information and unique company specific device identifiers on all devices for relocation requests. <u>Operators must monitor and document relocation requests and responses 24/7.</u>

(g) Operators will remove improperly parked Shareable Dockless Mobility Devices in accordance with local laws and without prior notice from the City.

(h) Upon evidence that an Operator's Shareable Mobility Devices are found to be consistently parked improperly, the City reserves the right to reduce the number of shared devices allowed under their permit or revoke it all together.

(i) The City reserves the right to cite, impound, ~~and~~ store, and dispose of improperly parked devices at the operators' expense.

Sec. 150-405 Operations.

(a) Shareable Dockless Mobility Devices and Dockless Mobility Devices may be operated within City Parks, including along the Atlanta BeltLine and shall not be considered motorized vehicles as set forth in Chapter 110, Article III, (Park Rules).

(b) Shareable Dockless Mobility Devices and Dockless Mobility Devices shall ~~may~~ not be operated on sidewalks or any space exclusively for pedestrian use.

(c) Shareable Dockless Mobility Devices and Dockless Mobility Devices may operate in vehicle travel lanes, in bike lanes, and along shared use paths throughout the City.

(d) Operators shall adhere to the fleet size minimums and maximums as determined by the Commissioner of City Planning through administrative regulations, communicated directly to Operators, and published on the City's website. Fleet maximums may be set based on the discretion of the Department of City Planning.

(e) Shareable Dockless Mobility Devices and Dockless Mobility Devices shall be operated in a manner consistent with all applicable state and local laws.

(f) Operators must educate users on proper Shareable Dockless Mobility Devices operations.

(g) Shareable Dockless Mobility Device and Dockless Mobility Device riders must yield to pedestrians in all cases including along shared use paths.

(h) Operators shall provide sufficient local operations and maintenance staff to address issues and remove improperly parked bikes or scooters.

(i) Third party advertising or sponsorship shall not be affixed or placed in any other manner on Shareable Dockless Mobility Devices.



[redacted]

(j) Operators shall work with the Department of City Planning, the Department of Public Works, and the Atlanta Police Department to enforce this ordinance with the most advanced and appropriate available technology.

(k) Operators shall work with the Department of City Planning and the Department of Public Works to enforce temporary or semi-permanent no-ride zones authorized by the Department of City Planning with the most appropriate available technology.

(l) In addition to the penalties operators are subject to in accordance with Section 150-402, users convicted of violating this section shall be punished as prescribed in Section 1-8 <https://library.municode.com/ga/atlanta/codes/code_of_ordinances?nodeId=PTIICOORENOR_CH1G EPR_S1-8GEPECOVI>.

Sec. 150-406 Data Sharing.

(a) Operators shall provide a documented Application Programming Interface ("API") that furnishes real-time anonymized data for the entire fleet. The format and field requirements of the API will be defined through administrative regulations, communicated directly to operators, and published on the City website. Operator may not change the API URL without notifying the City with at least 30 days' notice. Operators are required to make the API endpoint available for public consumption.

(b) Operators must provide a monthly data report ~~by no later than the first day of every month~~. Reporting requirements will be defined through administrative regulations, communicated directly to Operators, and published on the City's website.

Sec. 150-407- Equity.

(a) Operators shall have payment ~~and access~~ options which do not require the rider to have access to credit cards ~~or smartphones~~ to ~~access~~ use of a Shareable Dockless Mobility Device.

(b) Operators shall adhere to equitable distribution requirements as determined by the Commissioner of City Planning through the administrative regulations, published on the City's website, and provided directly to all Operators.

(c) Operators shall provide an Equity Plan to the Department of City Planning as part of the permit application. The Equity Plan may include such elements as discounted price options, cash-based payment systems, and non-smartphone reservation systems.

SECTION 2: That all ordinances and parts of ordinances in conflict herewith are hereby waived to the

extent of the conflict only.

SECTION 3: That the Department of City Planning shall be tasked with monitoring the results of implementing this ordinance, and shall provide a presentation regarding these results to the Public Safety and Legal Administration Committee of the Atlanta City Council annually until 2025 ~~by no later than January, 2020~~.

SECTION 4: The amendments in this ordinance shall become effective immediately~~on January 1, 2019~~.

SECTION 5: That the Municipal Clerk is instructed to retain all legislative history references in the codified version of Chapter 150, including Editor's notes, and shall not delete any such references, but shall amend them to include this ordinance.

SECTION 6: Ninety (90) days from the effective date of the amendments in this Ordinance, the Office of Mobility Planning shall produce a written report clarifying their legal and policy rationale for creating fleet size calculations including any fleet size maximums and minimums. The report shall also clarify from a legal, policy, and scientific data perspective, any growth or shrinkage standards. This report shall be created in conjunction with all operators permitted to operate in Atlanta in accordance with this Ordinance and shall be presented to the Public Safety and Legal Administration and Transportation Committees of the Atlanta City Council.

SECTION 7: In creating the report referenced in Section 7, the Office of Mobility Planning shall work with operators permitted to operate in Atlanta in accordance with this Ordinance to assess the current state of scooter/dockless mobility sharing in Atlanta, and use the data provided in accordance with this Ordinance to conduct this report.

**A true copy,**

**Municipal Clerk**

**ADOPTED** ***as amended*** **by the Atlanta City Council** **JAN 07, 2019**
**APPROVED per City Charter Section 2-403** **JAN 16, 2019**

2019-01 (18-O-1322)
PAGE 9 OF 16

# EXHIBIT A

## Permitting Fees

The table below summarizes the results of a fee study conducted to establish the cost recovery associated with ongoing costs of the new Shareable Dockless Device Permit.

| Shareable Dockless Mobility Device Permit Fee Study | | |
|---|---|---|
| | Annual Fee | Per Device Fee (excess of 500 devices) |
| Program Review, Oversight, and Coordination | $2,382.80 | N/A |
| Parking and Operations Enforcement and Data Dashboard | $9,152.53 | $8.31 |
| Equity Program Monitoring and Expansion | $2,782.68 | $5.56 |
| Parking Designations *approximately 1 designated area per 50 devices over 500 devices* | N/A | $40.00 |
| Total | $14,318.01 | $53.87 |
| Recommended Fee | $12,000.00 | $50.00 |

## Benchmarking Study

The table below summarizes permit fees in peer cities across the country.

| Shareable Dockless Mobility Device Permit Fee Benchmarking Study | | | | | | |
|---|---|---|---|---|---|---|
| City | Date Established | Annual Permit Fee | Application Fee | Annual Device Fee (per device) | Equity Zone Device Fee | Total annual cost to permit 1,000 devices (20% in equity zones) |
| Seattle | 8-Aug-18 | $250,000 | | $0 | N/A | $250,000 |
| Santa Monica | 10-Jul-18 | $20,000 | | $130 | N/A | $150,000 |
| LA - Revised | 27-Jun-18 | $20,000 | | $130 | $39 | $131,800 |
| LA - Initial | 14-May-18 | $500 | | $50 | N/A | $50,500 |
| Chicago | 1-May-18 | $250 | | $50 | N/A | $50,250 |
| Dallas | 19-Jun-18 | $404 | $404 | $42 | N/A | $42,808 |
| **Atlanta** | **25-Sep-18** | **$12,000** | **$100** | **$50** | **N/A** | **$37,100** |
| Austin | 16-Apr-18 | $0 | | $30 | N/A | $30,000 |
| SF - Scooters | 1-Jun-18 | $25,000 | $5,000 | $0 | N/A | $30,000 |
| SF - Bikes | 1-Jul-17 | $0 | $0 | $25 | N/A | $25,000 |
| St. Louis | 26-Jan-18 | $500 | | $10 | N/A | $10,500 |
| Durham | 17-Oct-17 | $250 | | $10 | N/A | $10,250 |

# Final Draft Administrative Regulations for Shareable Dockless Mobility Device Permit Holders

## I. Introduction

The purpose of the Administrative Regulations is to provide a set of rules and regulations to be adhered to by all Dockless Mobility Device Permit holders per City of Atlanta Code of Ordinances (City Code) Sections 150-400, et seq. These regulations are designed to provide the flexibility needed to respond and quickly adapt to the changing mobility environment.

These regulations are subject to amendment as the City works with Operators to make data-driven decisions prioritizing public safety and accessibility. A key to the success of the Shareable Dockless Mobility Device Permit is an open dialogue between the City and Operators in which Operators are responsive to concerns relating to public safety and accessibility of the public-right-way.

## II. Definitions

(a) "Administrator" shall mean the Commissioner of the Department of City Planning or their or designee.
(b) "Operator(s)" shall mean any person or business meeting the definition of "Dockless Mobility Device System Operator" as established in City Code Section 150-400. .
(c) "Permit(s)" & "Permitting" shall refer to the "Shareable Dockless Mobility Device Permit" as defined in City Code Section 150-400.
(d) "Device(s)" shall mean any permitted transportation device defined as a "Shareable Dockless Mobility Device"in City Code Section 150-400.

## III. Shareable Dockless Mobility Device Permit

The Permit will be issued by the Department of City Planning Office of Zoning and Development. The Permit application will be posted online. Approved Permits will be valid for a period of one year from the date of issuance. The City will not refund any fees for Devices that are required to be removed from deployment.

### *A. Permit Fee*

The Permit costs include the following
(a) Permit application fee is $100
(b) Shareable Dockless Mobility Device Permit fee is $12,000 annually for up to 500 Devices
(c) Additional per Device fee for Devices over 500 is $50 per Device annually

For example, the fee for Permitting 600 Devices would be:

| | |
|---|---|
| $100 | Application Fee |
| + $12,000 | Permit Fee for 500 Devices |
| <u>+ $50 x 100</u> | <u>Additional Devices</u> |
| = $17,100 | to Permit 600 Devices |

Operators must pay all Permit fees prior to issuance.

### *B. Fleet Expansions*

Permits may be amended to accommodate fleet expansions. Additional Devices may be permitted up to any fleet maximums set forth in these regulations.

Per Device fees for any Devices permitted after the initial launch will be prorated based on the schedule below. The City will not refund any fees for Devices that are required to be removed from deployment.

Prorated Fee Schedule:

| | |
|---|---|
| • Within first three months of initial Permit approval | $50.00 per Device |
| • Within four to six months of initial Permit approval | $37.50 per Device |
| • Within seven to nine months of initial Permit approval | $25.00 per Device |
| • Within ten to twelve months of initial Permit approval | $12.50 per Device |

### *C. Temporary Fleet Expansion*

Upon administrative declaration, temporary fleet maximums may be established by the Commissioner of City Planning for a specific time period. In advance of any temporary fleet maximum, all Permit holders will be notified directly and instructed on how to apply for a temporary fleet expansion.

Applications shall be approved or denied administratively through the Department of City Planning. Prorated fees of $4.00 per additional Device must be paid in full prior to any approval of additional Devices.

Temporary fleet expansions will expire at a specific date and time. Prior to that expiration, Permit holders are responsible for removing any temporarily permitted Devices.

### *D. Insurance and Indemnification*

As part of the Permit application, Operators shall procure and maintain insurance against claims for which the Operator has indemnified the City for the duration of the Permit. Operator shall maintain General Liability limits no less than One Million Dollars ($1,000,000.00) per occurrence for bodily injury, personal injury and property damage, and with an aggregate limit not less than Two Million Dollars ($2,000,000.00). Each insurance policy shall name the City as an additional insured and it shall be endorsed to state that: (i) coverage shall not be suspended, voided, or cancelled by either party, or reduced in coverage or in limits except after thirty (30) calendar days prior written notice by certified mail, return receipt requested, has been given to City; and (ii) for any covered claims, the Operator's insurance coverage shall be primary insurance as respects the City and any insurance or self-insurance maintained by the City shall not contribute with it. The insurance required to be provided herein, shall have an A.M. Best Rating not less than A- and not less than Class VII.

## IV. Permitted Operating Fleet Sizes

The maximum number of Devices allowed to be permitted per Operator may be adjusted by the Administrator on a monthly basis. This will allow the City to monitor public safety while also allowing Operators to increase the size of their fleets over time to meet demand. The Administrator will heavily consider market needs, overall utilization rates, overall regulatory compliance, and capacity of the right-of-way in adjusting any fleet maximums.

Any fleet maximums will be included in the Permit application and will be applicable for all Operators. All fleet maximum increases issued by the Administrator will apply to all permitted Operators not subject to any superseding fleet size reductions due to compliance issues. Permitted Operators who wish to expand their fleet to meet increases in the fleet maximum or for any other reason will need to submit for a Permit amendment and pay any and all fees that would be associated with those additional operating Devices at the time of permitting (See Fleet Expansion Fee Schedule above).

## V. Device Removal

In the event that a Permit is revoked or an Operator is no longer willing or able to operate within the City, the Operator must immediately surrender its Permit(s) to the City and remove all Devices from the public right-of-way and private property immediately. The City will not refund any fees for Devices that are removed by the City of Atlanta.

## VI. Device Specifications

All Devices shall comply with all applicable state law and design standards described in the Code of Federal Regulations and by the International Organization for Standardization.

All Devices shall have vendor contact information and a unique identifier affixed to the Device per City Code Section 150-404 (f). This contact information should be posted in an obvious manner and should be highly visible to the public.

The City of Atlanta encourages Operators to include visible signage on Devices to inform users and non-users of parking and riding regulations. This could include clearly stating the following:

- Do not ride on sidewalks
- Follow traffic rules
- Park responsibly
- How to report maintenance and parking violations to the Operator

Operators must monitor and maintain Devices in their fleet to ensure all Devices are in good condition. Any Device determined to be inoperable for any reason, including low battery, must be taken out of service immediately and removed from the public right-of-way.

## VII. User Engagement and Responsiveness

Operators must work to continuously improve customer service programs and public awareness around rules and regulations.

### *A. Customer Service*

The customer service program for each Operator must be highly responsive. The vendor contact information posted on each Device must be monitored throughout the day and all requests and responses must be documented. Documentation shall include the nature of the complaint including description, time of day, and location as well as a description and time of the response.

### *B. User Education*

Operators must develop a user education program that informs users of the rules and regulations around parking and riding Devices. Operators should provide creative and effective education outreach programs. These programs will need to evolve over time to focus on problematic behavior and specific compliance issues.

## VIII. Equity Zones

The Administrator has established Equity Zones within the City. These Equity Zones were based upon the Equitable Target Areas (ETAs) and *The Atlanta City Design*. ETAs have been established by the Atlanta Regional Commission and constitute geographic areas determined to possess higher concentrations of communities potentially subject to equity and environmental justice issues. The most vulnerable of these ETAs that are also comprised primarily of Urban Neighborhoods as described in *The Atlanta City Design* define the Equity Zones (Figure1). This area was subdivided into the four Equity Zones identified in Figure 1 below. Operators will be provided with geographic shape files of the Equity Zones upon receiving Dockless Permit approval.




*Figure 1. City of Atlanta Equity Zones*

Additional information regarding ETAs can be found at:
https://atlantaregionsplan.org/resources/equitable-target-area-index-eta/

Each Operator is required to submit an Equity Plan as part of the Permit application. As part of the Equity Plan, Operators are required to commit to distributing a stated portion of their fleet in each Equity Zone. The boundaries and nature of these Equity Zones may be adjusted by the Administrator on no more than a monthly basis.

## IX. Parking Zones

The Administrator retains the right to designate areas as Parking or No Parking zones, either on a permanent or temporary basis. This may be accomplished through signage, painting, the use of geofencing, or any other appropriate means.

The location and nature of Parking/No Parking Zones will be based on availability of right-of-way, parking supply/demand, requests from the public and other stakeholders, and available resources.

Approval will be subject to review by the Department of City Planning, the Department of Public Works, or other appropriate approval agency.

Any established No Parking Zones will be communicated to Operators and posted to the public at least 10 days prior to taking effect.

## X. Data Sharing and Reporting

Operators must work with the City to provide accurate data for enforcement and planning purposes.

### *A. Digital Dashboard*

Operators must work with the City to provide a data dashboard interface to support the City in viewing, querying, and mapping data. The dashboard must allow the ability to locate Devices by ID number and quantify the number of Devices in pre-defined geographies including within the Equity Zones and within the City of Atlanta.

Ultimately, Operators will be required to provide the City or its designee with accurate, privatized, and real-time data on its entire city fleet through documented Application Programming Interfaces (APIs) built to Mobility Data Specification (MDS) or similar standards. Data specifications will be communicated directly to Permitted Operators.

### *B. Monthly Data Reporting*

Operators shall provide the Department of City Planning with a monthly report within 14 days of the end of the calendar month. The monthly data report will include:

- Ridership Report
  - Total number of trips per day
  - Maximum number of Devices in operation per day
  - Average trip duration (in minutes and seconds)
  - Average trip distance
  - Number of unique users by month (number of accounts taking at least one trip)
  - Average utilization rate (number of trips per deployed Device per day)
- Customer Service Report
  - List of reported parking complaints including: description, location of incident, description of company response, response time
  - List of other customer service complaints by complaint category (e.g. throttle, brake, low battery, other)
- Safety Report
  - List of crashes reported to the Operator (if any) including any documented injuries

- Operations Report
  - Summary of any efforts to improve education around riding and parking Devices (e.g., outreach events, in-app modifications, other strategies)
  - Summary of new technological strategies (implemented or under development) to improve safety and general compliance with the ordinance and regulations
  - Summary of other efforts in Atlanta and across the country to improve safety

The Ridership Report will allow the City to compare certain summary statistics across Operators over time, while the Customer Service Report, Safety Report, and Operations Report will provide the City with a qualitative summary of how each Company is working to ensure safe operations.

### *C. User Survey*

The Administrator may develop an optional user-survey for Operators to distribute to their users and report the results to the Department of City Planning's Office of Mobility Planning. Participating in the administration of such a survey will be voluntary on the part of Operators.

## XI. Partnership

The success of the partnership between Operators and the City will require Operators to proactively engage with City staff to resolve issues, develop solutions, and improve compliance. Operators will be responsible for informing the City of any operational changes or technology modifications that may differ from what was presented as part of the initial Permit.

Permitted Operators will be required to provide contact information for the general manager of the Atlanta fleet. This person shall be available to City staff during normal business hours and shall promptly respond to inquiries and requests. Both the City and the Operator shall make themselves available as requested for in-person meetings.

### *A. Special Events*

Operators must cooperate with the Department of City Planning, the Atlanta Police Department, Mayor's Office of Special Events, Department of Parks and Recreation, the Department of Public Works, and any other relevant entity to ensure public safety during special events, construction, or emergency conditions. Cooperation to ensure public safety may include removing Devices from a specific area, prohibiting riding and/or parking in certain areas, or establishing reduced speed zones. Operators may be invited to participate in special event planning and must be prepared to submit temporary operation plans to the City for special events as requested.

### *B. Compliance and Enforcement*

The City's enforcement program will be fairly applied to all permitted companies and will prioritize compliance. Operators will work with the City's 311 System to receive and respond to complaints. Operators will document responses and response times and provide the City with a summary of the response.